IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SOUTHWESTERN BELL YELLOW PAGES, INC., | ) )  )  ) |
| Plaintiff, | ) |
| v. | )   NO. CIV-05-0531-HE |
| | ) |
| SHARON ROSS, an individual, d/b/a BAIL BONDS BY MYRA, | ) ) ) |
| Defendant/Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| SYLIDIA ITALIANO, individually and as personal representative of THE ESTATE OF MYRA L. WINN, ET AL., | ) ) ) ) |
| Third-Party Defendants. | ) |

**ORDER**

This case is before the court on the motions for summary judgment filed by the remaining third-party defendants.[1]  [Doc. Nos. 35 and 36].  Plaintiff has responded in opposition to the motions and has filed a motion for partial summary judgment to which the defendants have responded.  [Doc. #34].  Upon review, the court concludes defendants' motions should be denied in part and granted in part and plaintiff's motion should be granted

---

[1]*The original parties to this action, Southwestern Bell Yellow Pages, Inc. and Sharon Ross, have settled their dispute. [Doc. #44]. In addition, third-party plaintiff Ross has settled her claims against third-party defendants Sylidia Italiano, Robert Ross, Mary Ross and Tracy Maxwell, a/k/a Tracy Winn. [Doc. #53]. Thus, the only remaining claims are those of third-party plaintiff Ross against third-party defendants Kyle Kilgore, Kelly Davidson, Leighton Stanley, The Board of County Commissioners of Oklahoma County and Sheriff John Whetsel. For simplicity, the remaining parties will be referred to as "plaintiff" or "defendant[s]."*

as to the narrow issue encompassed by it.[2]

Facts

Certain of the underlying facts are undisputed. As to others, such as the specific actions taken by some or all of the deputies and police officer, disputes exist. The following recitation of facts recounts them in the light most favorable to the non-moving party.

Plaintiff's claims against the defendants stem from a dispute involving the probate of Myra L. Winn's estate and specifically her bail bond business.[3] After Ms. Winn's death, plaintiff, who states she is a licensed bail bondsman, claims to have continued Ms. Winn's business until May of 2003, when it was closed "at the request of" the administrator of Ms. Winn's estate. On September 22, 2003, an order was issued by the state probate court requiring the immediate "surrender" of, among other things, the assets and instrumentalities of Ms. Winn's bail bond business to the "possession and control" of Sylidia Italiano, the personal representative of Ms. Winn's estate. The order also specifically enjoined plaintiff and plaintiff's employees from possessing, controlling or using any of the assets or instrumentalities of Ms. Winn's business. Def.s' Ex. 2. The order did not direct or authorize

---

[2]*Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, the court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Martin v. Kansas, 190 F.3d 1120, 1129 (10th Cir. 1999), overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Martin, 190 F.3d at 1129.*

[3]*According to plaintiff, Ms. Winn passed away in February of 2002.*

law enforcement officials to serve or execute the order or to assist a party in executing the order. It did direct "aggrieved" persons to appear for a hearing on a date certain to show cause why the order should not be continued or should be modified.[4]

The same day the order was issued, Ms. Italiano, along with several family members and defendants Kilgore and Davidson, appeared at plaintiff's business.[5] Defendants Kilgore and Davidson, who are Oklahoma County Deputy Sheriffs, were on duty and in uniform. They entered the business first. Defendant Kilgore told plaintiff they were there to "make sure the peace is withheld or upheld while these people are allowed to enter your place of business and take items that they've been ordered that belongs – rightfully belongs to them." Pl.'s Dep. at 77. Defendant Kilgore then presented plaintiff with the order of the probate court. After Ms. Italiano and the others entered and began removing items, plaintiff told defendants Kilgore and Davidson that they were taking items which were not specified in the order and that belonged to her rather than to Ms. Winn's estate. Plaintiff, who states she was crying during the encounter, asked defendants Kilgore and Davidson to "divert" Italiano and the others from taking her property. She states both Kilgore and Davidson ignored her until defendant Kilgore became "frustrated" with her and told her to "stand over there out of the way or you're going to jail." Pl.'s Dep. at 79. Defendants Kilgore and Davidson did not

---

[4]*Plaintiff claims this order was later invalidated by the probate court. However, she admits in her response to the motion filed by defendants Kilgore, Davidson, the Board and Whetsel that the "legality or validity of the order" on the dates in question is not an issue. Pl's. Resp. at 3.*

[5]*Plaintiff started her own bail bond business, "Sharon's Bail Bonds," in January of 2003, and apparently ran her business out of the same office as Myra's Bail Bonds.*

3

assist Italiano and the others in gathering or carrying items out of the business.

The next day, September 23, 2003, Italiano, along with several family members and defendant Stanley, arrived at plaintiff's home while she was away. Defendant Stanley, a retired police captain with the City of Moore, Oklahoma,[6] had been contacted by Ms. Italiano's attorney and asked if he would accompany her over to plaintiff's home to "get some property back from her relatives." Def. Stanley's Aff. at 2. After telling them that he would not enter the residence or help remove any property, defendant Stanley agreed to "keep the peace" for no longer than thirty (30) minutes for a fee of $100.00. Id. Before accompanying Ms. Italiano and the others over to the plaintiff's home, defendant Stanley, who was wearing his uniform, badge and gun, met them at a convenience store where he was paid and where he looked over the probate order "to see that it was signed by a judge and what items were listed for them to take." Id.

After arriving at the residence in separate vehicles,[7] defendant Stanley and the others proceeded through a gate onto plaintiff's property. When plaintiff's son saw them coming, he told them that they were not welcome or allowed and they "needed to be on the other side of the gate." Dep. of Nathaniel Ross, p. 34. Defendant Stanley, who was holding the probate order, stood at the base of the porch and told plaintiff's son that Ms. Italiano and the others had "papers here to get what they need" and that he needed to "step aside." Id. at 35. He

---

[6]Although retired, defendant Stanley is "Commissioned" as a "Life Time Member of the Moore Police Department," and is "CLEET" certified as a "Full-Time Law Enforcement Officer." Def. Stanley's Ex. 1.

[7]Defendant Stanley drove his own private, unmarked vehicle to the residence.

then placed his hand on his gun.[8]  After that, Ms. Italiano and the others "pushed" past plaintiff's son and went inside the home.  When they were finished gathering items and had exited the home, defendant Stanley and the others left the residence.

Plaintiff sues the defendants under 42 U.S.C. § 1983 alleging that the actions of defendants Kilgore, Davidson and Stanley were under "color of state law" and violated her procedural due process rights under the Fourteenth Amendment and her right to be free from unlawful seizures under the Fourth Amendment.[9]  She further alleges that the actions of defendants Kilgore and Davidson were pursuant to an official policy or custom of the Oklahoma County Sheriff's office and seeks to hold the Board of County Commissioners of Oklahoma County and Sheriff Whetsel[10] liable for the actions of their employees.  Finally, plaintiff raises state laws claims of trespass, conversion, assault, intentional infliction of emotional distress, abuse of process and intentional interference with business relations against defendants Kilgore and Davidson and state law claims of trespass, conversion and abuse of process against defendant Stanley.

---

[8]*Defendant Stanley disputes this version of events.  He states in his affidavit that he stepped up on the porch while Ms. Italiano and the others knocked on the door and were admitted inside by a "white male juvenile."  He heard someone from the residence say "'there's a cop out there.'"  He then waived at the juvenile and hollered "'I'm just here to keep the peace.'"  Def. Stanley's Aff. at 3.*

[9]*Section 1983 provides individuals with redress for violations of rights "secured by the Constitution and laws of the United States" where the violations are committed under color of state law.  Yanaki v. Iomed, Inc., 415 F.3d 1204, 1207 (10th Cir. 2005) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (internal quotation omitted)).*

[10]*The claims against Sheriff Whetsel, none of which are in his individual capacity, are the equivalent of claims against the defendant Board of County Commissioners.  Lopez v. LeMaster, 172 F.3d 756, 762 (10th Cir. 1999).*

Defendants Kilgore and Davidson

Defendants Kilgore and Davidson seek summary judgment on plaintiff's claims against them. With respect to plaintiff's § 1983 claims, they allege their peacekeeping actions are insufficient to establish a constitutional violation and they are entitled to qualified immunity. Plaintiff counters that the actions of the defendants went beyond keeping the peace. Rather, she argues that the defendants affirmatively aided Ms. Italiano and the others in taking property which belonged to her and not Ms. Winn.

Plaintiff relies on Marcus v. McCollum, 394 F.3d 813 (10th Cir. 2004), in support of her position. The court in Marcus held that "[w]hen a police officer is involved in a private party's repossession of property, there is no state action [for purposes of § 1983] if the officer merely keeps the peace, but there is state action if the officer affirmatively intervenes to aid the repossessor enough that the repossession would not have occurred without the officer's help." Moore v. Carpenter, 404 F.3d 1043, 1046 (8th Cir. 2005) (citing Marcus, 394 F.3d at 818-19). The plaintiff in Marcus alleged that the actions of police officers during a "self-help" repossession of her vehicle by a creditor violated her procedural due process rights and her Fourth Amendment right to be free from unreasonable seizures. Marcus, 394 F.3d at 815-16. One of the officers in Marcus, who happened to be parked across the street from plaintiff's home, was alerted to the repossession a few minutes before it occurred. Id. at 816. When the creditor was confronted by plaintiff, the officer, either at the behest of the creditor or on his own initiative, called for backup and drove to plaintiff's home. Id. Upon their arrival, plaintiff and her son, who were arguing with the creditor and attempting to release

the vehicle from the tow truck, were allegedly told by an officer that they needed to stop their interference, let the creditor take the vehicle and take up their claim in small claims court. Id.  Plaintiff also alleged that an officer poked her son in the chest and threatened to take them to jail. Id. at 817.  Although plaintiff informed the officers that the creditor was taking the wrong vehicle, the officers did not attempt to verify the creditor's ownership interest. Id. at 816-17.

The Marcus court found that the officers' alleged actions, when viewed in their totality, were sufficient to survive summary judgment on the question of state action and qualified immunity.  Marcus, 394 F.3d at 822-24.  In particular, the court concluded that "under plaintiff's version of the facts a jury could find that the officers did more than merely acquiesce or stand by in case of trouble." Id. at 822.  With respect to qualified immunity, the court concluded that the rights asserted by plaintiff were well established and that the evidence "could support an inference that the police officers were aware of circumstances making their actions unlawful." Id. at 823-24.

Defendants argue that Marcus is inapplicable because it involved a self-help repossession, whereas in this case there was a facially valid court order allowing removal of Ms. Winn's property. The court finds this distinction unpersuasive. The order of the probate court did not order or authorize the seizure of anything by Ms. Italiano or anyone else. Rather, it directed those then in possession of the identified items to "surrender" them. Further, the order was not directed to law enforcement authorities and did not purport to authorize enforcement efforts by them.  Thus, the order did not confer broader authority on

the officers than they would otherwise have had to keep the peace. As such, "[t]he controlling question to be resolved by a factfinder" is whether the defendants "were simply keeping the peace, as they were entitled to do, or aiding [Ms. Italiano and the others], as they were not." Marcus, 394 F.3d at 822.

With respect to defendant Kilgore, the court concludes the submissions of the parties, taken in a light most favorable to plaintiff, raise a material issue of fact as to whether he was neutral in his effort to keep the peace or affirmatively aided Ms. Italiano and the others in taking plaintiff's property. In addition, based on the circumstances as alleged by plaintiff, fact issues remain regarding whether a reasonable officer "would consider the actions here violative of plaintiff's constitutional and statutory rights." Marcus, 394 F.3d at 824. Accordingly, defendant Kilgore's motion for summary judgment with respect to plaintiff's § 1983 claims is **DENIED**.[11]

With respect to defendant Davidson, plaintiff has offered nothing to suggest that she did more than merely acquiesce or stand by in case of trouble. Her indifference to plaintiff's interests, if that is what it was, does not constitute the sort of purposeful activity or intervention contemplated by Marcus. As such, her involvement cannot be viewed as state action. Accordingly, defendant Davidson's motion for summary judgment on plaintiff's §1983 claims is **GRANTED**.

---

[11]*The court also finds unpersuasive defendants' rather remarkable assertion that, in light of plaintiff's settlement with certain individual defendants, the doctrine of res judicata precludes any further recovery against these defendants.*

Defendants Kilgore and Davidson also request summary judgment on plaintiff's state law tort claims alleging they are immune from liability under the Oklahoma Governmental Tort Claims Act ("GTCA"). 51 Okla. Stat. §§ 151-200. The GTCA immunizes state employees from liability in tort for acts committed within the scope of their employment. 51 Okla. Stat. §§ 152.1(A) and 163(C); Nail v. City of Henryetta, 911 P.2d 914, 916 (Okla. 1996). "'Scope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment . . . ." 51 Okla. Stat. § 152(9). An act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith. DeCorte v. Robinson, 969 P.2d 358, 362 (Okla. 1998); Nail, 911 P.2d at 916.

In this case, the evidence does not support a reasonable inference that defendants Kilgore or Davidson acted with malice or in bad faith. As a result, their motions for summary judgment on plaintiff's state law tort claims are **GRANTED**.

Finally, defendants request summary judgment on plaintiff's claims for punitive damages. "In § 1983 matters, punitive damages will be awarded only when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Fuerschbach v. Southwest Airlines Co., ___ F.3d ___, 2006 WL 466489, at *7 n.7 (10th Cir. Feb. 28, 2006) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). See also Wulf v. City of Wichita, 883 F.2d 842, 867 (10th Cir. 1989) ("an award of punitive damages requires an assessment of [defendant's] subjective state of mind"). The evidence, even viewed in the light most favorable to plaintiff, does not support a reasonable inference that defendant Kilgore's conduct rose to that level

in this case. See, e.g., Wulf, 883 F.2d at 867 ("[N]ot every intentional violation of a plaintiff's constitutional rights subjects a defendant to punitive damages."). Therefore, defendants' request for summary judgment on plaintiff's claim for punitive damages is **GRANTED**.

Defendant Board of County Commissioners

Plaintiff alleges defendant Board is responsible for the actions of defendants Kilgore and Davidson because they were acting pursuant to a policy, custom or practice of the Sheriff's Department. Defendant Board requests summary judgment on this claim alleging plaintiff has failed to establish a policy or custom that caused her alleged injuries.

A local government may be held liable for the constitutional violation of its employees only when the employee has acted pursuant to an official policy or custom which caused a constitutional injury. Hollingsworth v. Hill, 110 F.3d 733, 742 (10th Cir. 1997). In this case, Kilgore and Davidson's responses to requests for admission state that their actions were in accordance with a policy, custom, and practice of the Oklahoma County Sheriff's Department. Pl.'s Resp. Exs. 5 & 6. As the court has concluded that fact issues exist with respect to whether defendant Kilgore's action violated plaintiff's constitutional rights, the Board's alleged custom and practice in this regard creates a potential basis for liability. Therefore, defendant Board's motion for summary judgment as it pertains to defendant Kilgore is **DENIED**.

Defendant Stanley

Defendant Stanley has moved for summary judgment on plaintiff's § 1983 claims

alleging his actions do not constitute state action.[12] While the evidence is disputed, when viewing the facts in a light most favorable to plaintiff, the court concludes summary judgment should be denied.

Recounting the facts in the light most favorable to plaintiff, there is evidence that defendant Stanley accompanied Ms. Italiano and the others to plaintiff's home, approached plaintiff's son and told him they had a right to enter, told the son he needed to stand aside, and that Stanley placed his hand on his gun. Plaintiff's son testified that if not for defendant Stanley's presence and actions he would not have allowed Ms. Italiano and the others to enter the home. Dep. of Nathaniel Ross, pp. 36-39. These actions, when viewed in their totality, raise a fact issue as to whether defendant Stanley did more than merely "stand by" to keep the peace and actively facilitated Ms. Italiano and the others in their actions. See, e.g., Marcus, 394 F.3d at 819 ("An officer's 'arrival with the repossessor' could give 'the repossession a cachet of legality' and have 'the effect of intimidating the debtor into not exercising his right to resist, thus facilitating the repossession.'") (quoting Booker v. City of Atlanta, 776 F.2d 272, 274 (11th Cir. 1985)). Accordingly, defendant Stanley's motion for summary judgment on plaintiff's § 1983 claims is **DENIED**.

Defendant Stanley also moves for summary judgment on plaintiff's state law tort

---

[12]The parties do not indicate the extent of defendant Stanley's authority as a retired police officer. However, "the mere fact that a defendant lacked actual state authority . . . is not determinative." Dry v. City of Durant, 242 F.3d 388, 2000 WL 1854140, at *3 (10th Cir. Dec. 19, 2000) (unpublished decision cited for persuasive only pursuant to 10th Cir. R. 36.3(B)). "Rather, the 'misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is also action taken under color of state law.'" Id. (quoting Monroe v. Pape, 365 U.S. 167, 184 (1961)).

claims against him for trespass, conversion and abuse of process. With respect to plaintiff's claim of trespass, defendant alleges that he did not enter plaintiff's home and that plaintiff's son never told him he was trespassing or that he needed to leave.

"According to Oklahoma law, a trespass involves an unauthorized 'actual physical invasion of the property of another.'" Lawmaster v. Ward, 125 F.3d 1341, 1352 (10th Cir. 1997) (quoting Fairlawn Cemetery Ass'n v. First Presbyterian Church, 496 P.2d 1185, 1187 (Okla.1972)). In Oklahoma, police officers are considered trespassers "only where they have entered property without proper legal authority to do so." Lawmaster, 125 F.3d at 352.

In this case, there is no dispute that defendant Stanley did not enter plaintiff's home. Plaintiff's son concedes that Stanley came no closer than the bottom step to the porch and that, after the discussion with the son, he later retreated to a position approximately twenty feet from the porch. Dep. of Nathaniel Ross, pp. 36, 40. The court concludes such conduct by a law enforcement officer does not, without more, constitute actionable trespass. As a result, summary judgment is **GRANTED** on this claim.

With respect to plaintiff's claims of conversion the court concludes summary judgment should be granted in favor of defendant Stanley. In order for defendant Stanley's acts to constitute conversion, he must have wrongfully exerted dominion over plaintiff's property in denial of or inconsistent with her rights to that property. Lawmaster v. Ward, 125 F.3d at 1353 (citing Oklahoma law). Dominion implies "both title and possession and appears to require complete retention of control over disposition." Id. (quoting Installment Fin. Corp. v. Hudiburg Chevrolet, Inc., 794 P.2d 751, 753 (Okla. 1990)).

While there may be some evidence that defendant Stanley's acts assisted Ms. Italiano and the others in gaining access to plaintiff's home, there is no evidence that defendant Stanley exercised dominion over plaintiff's property either directly or through others acting at his direction and for his benefit.  See, e.g., Continental Gin Co. v. De Bord, 123 P. 159, 163 (Okla. 1912) (finding that a defendant may be guilty of conversion without actual possession "if he exercises dominion over the property *and* participates in the wrongful act of one who is in actual possession") (emphasis added).  Therefore, defendant Stanley's request for summary judgment on plaintiff's claim of conversion is **GRANTED**.

Finally, with respect to plaintiff's claim of abuse of process, the court concludes summary judgment should be granted in favor of defendant Stanley.  In order to demonstrate abuse of process, plaintiff must show that defendant Stanley improperly used the court's process primarily for an ulterior or improper purpose and that plaintiff suffered damages as a result.  Callaway v. Parkwood Village, L.L.C., 1 P.3d 1003, 1004 (Okla. 2000); Greenberg v. Wolfberg, 890 P.2d 895, 905 (Okla. 1994).  "The quintessence of abuse of process is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends."  Greenberg, 890 P.2d at 905.

There is no dispute that defendant Stanley had no involvement in the probate proceedings or had any awareness of Ms. Italiano's motives for obtaining the order in question.  In addition, there is no evidence that defendant Stanley had any ulterior or improper motives when he agreed to assist Ms. Italiano in serving the order or that he assisted them in allegedly obtaining property not specified in the order.  Thus, defendant

Stanley's motion for summary judgment on plaintiff's claim of abuse of process is **GRANTED**.

Plaintiff's Motion for Partial Summary Judgment

Plaintiff has filed a motion for partial summary judgment requesting the court find that the court order in question did not authorize the seizure of items and did not authorize law enforcement officials to aid others in "executing" it. As noted previously, the order did not authorize seizure of anything – it ordered those in possession of various items to surrender them, and provided a procedure whereby they could contest that order. Ms. Italiano and the others took this order to surrender property and turned it into a self-help seizure warrant – something it was not. Although that determination does not end the issue as to the potential liability, it does at least lead to the conclusion that the order did not create actual authority in these defendants to seize property or to assist in seizing it. To that extent, summary judgment as to that issue is **GRANTED** in plaintiff's favor.

In accordance with the above, the only claims remaining for trial are plaintiff's 42 U.S.C. § 1983 claims for compensatory or nominal damages against defendants Kilgore, Stanley and the Board of County Commissioners of Oklahoma County.

**IT IS SO ORDERED**.

Dated this 8th day of March, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE